

**United States District Court**

NORTHERN DISTRICT OF GEORGIA

FILED IN CHAMBERS
U.S.D.C. - Atlanta

JUL 0 2 2019

JAMES N. HATTEN, Clerk
By: ⟨signature⟩ Deputy Clerk

UNITED STATES OF AMERICA

v.

RICHARD PHILIPPE

**CRIMINAL COMPLAINT**
Case Number: 2:19-MJ-31

UNDER SEAL

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about June 22, 2019 in Lumpkin County, in the Northern District of Georgia, defendant(s) did, aid and abet the transfer of firearms to an out of state resident and travel between states with intent to unlawfully deal in firearms,

in violation of Title 18, United States Code, Sections 922(a)(5), 924(n), and 2.

I further state that I am a Special Agent and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

⟨signature⟩
Signature of Complainant
Emily K. Norris

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

July 2, 2019                                          at   Atlanta, Georgia
Date                                                       City and State

JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE                         ⟨signature⟩
Name and Title of Judicial Officer                     Signature of Judicial Officer
AUSA Jennifer Keen / Enter USAO/LIONS No.

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Emily K. Norris, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since 2018. I am currently assigned to the Atlanta Field Division, Group I, which is involved in various facets of ATF's enforcement programs to include firearms trafficking. As a Special Agent for the ATF, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and Special Agent Basic Training for the ATF. I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. Prior to my employment with ATF, I graduated from Mercer University School of Law in 2011 and obtained a Juris Doctorate degree. For approximately six (6) years, I was employed at the Athens-Clarke County District Attorney's office in Georgia as a prosecutor. While at the District Attorney's office, I litigated numerous major violent felony cases, including those involving firearms allegations at the state level.

2. During my tenure as an ATF SA, I have participated in numerous investigations and the execution of search warrants and arrest warrants, where illegally purchased/trafficked firearms, books/ledgers indicating sales, receipts, computers, cellular telephones, and other items used to facilitate firearms trafficking were seized. I have personally conducted and/or assisted in investigations of criminal acts involving violations of Title 18, United States Code, Sections 922(a)(5) [transfer of firearms to out of state resident] and 924(n) [travel between states with intent to unlawfully deal in firearms].

3. During my tenure as an ATF SA, I gained experience in debriefing defendants, co-

conspirators, witnesses, and informants who have been involved in the unlawful purchase/sale/distribution of firearms. I have also debriefed individuals who were arrested for possessing firearms in furtherance of violent and/or drug trafficking crimes. During these debriefings, numerous defendants have advised that they utilized "straw" purchasers to obtain firearms and ammunition for transfer/sale to prohibited persons or to facilitate other crimes.

4. A straw purchase is the acquisition of firearm(s) from a federally licensed firearms dealer (FFL) by an individual (the "straw"), done for the purpose of concealing the identity of the true intended receiver of the firearm(s). The "actual purchaser" is often the person who is prohibited from purchase who seeks to obtain the firearm through the "straw purchaser."

5. Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that Richard PHILIPPE has violated Title 18, United States Code, Sections 922(a)(5) [transfer of firearms to out of state resident] and 924(n) [travel between states with intent to unlawfully deal in firearms].

6. The facts contained in this affidavit come from my personal observations, ATF records/documents, my training and experience, and information obtained from other agents and witnesses.

**PROBABLE CAUSE**

1. On Friday, June 28, 2019, SA Patrick Briody from the ATF Bridgewater Field Office (Massachusetts) contacted agents from Group I of the ATF Atlanta Field Division and provided information regarding two firearms recently purchased by an undercover officer that agents traced back to a Georgia Federal Firearms Licensee (FFL). SA Briody conveyed the following to Atlanta agents in regards to the completed undercover

transaction:

2. On Thursday, June 27, 2019, ATF agents from the Bridgewater Field Office participated in an undercover operation in which an individual contacted an undercover officer by telephone and offered to sell firearms to the undercover officer. The undercover officer was directed to a residential address in Brockton, Massachusetts where he/she met with an individual identified as Tyrell HAMPTON. HAMPTON was later confirmed by ATF agents to be a convicted felon. The undercover officer purchased the following items from Hampton in exchange for $2,200 in cash: a Taurus Model G2C, 9mm pistol, a Glock Model 19GEN5, 9mm pistol, along with 21 rounds of 9mm ammunition for the firearms. ATF SA Jacob Berrick examined the above-referenced firearms and, through a check of ATF databases, determined that both pistols had been purchased in Georgia from Dahlonega Gold & Pawn, a federally licensed firearms dealer located at 7 Barrett Cir, Dahlonega, Georgia 30533, in the Northern District of Georgia.

3. A review of ATF records revealed Austin LUMPKIN to be the original purchaser of the two firearms recovered by ATF agents in Massachusetts. According to ATF records, LUMPKIN purchased the Glock Model 19GEN5, 9mm pistol on June 12, 2019, and the Taurus Model G2C, 9mm pistol, on June 21, 2019, from Dahlonega Gold and Pawn.

4. Based on my training and experience, the short time between purchase date and crime recovery date (16 days and 7 days, respectively for the Glock pistol and Taurus pistol) indicates that the firearms have been illegally trafficked.

5. On June 28, 2019, Industry Operations Investigator (IOI) Shaun Griffith contacted Dahlonega Gold & Pawn to inquire about the purchase of these firearms. IOI Griffith spoke to an employee from Dahlonega Gold & Pawn who told him that he/she was very

familiar with LUMPKIN. The employee stated that LUMPKIN had purchased approximately 100 firearms from their store in the past year. The employee explained that LUMPKIN commonly purchased the same type of firearm because LUMPKIN told employees that he used them to conduct online comparison tests on social media sites. The employee stated that LUMPKIN had recently called the store to inform them that he would be returning from vacation shortly and would be coming back to visit the store at that time. IOI Griffith instructed the employee to contact ATF as soon as LUMPKIN returned to the store.

6. Later that same day, an employee contacted IOI Griffith and notified him that LUMPKIN had returned to the store. SA Dorman contacted an employee at the store and instructed him/her not to sell any firearms to LUMPKIN. The employee told SA Dorman that LUMPKIN did not inquire about purchasing any firearms and only came into the store to speak with employees.

7. On Monday, July 1, 2019, SA Dorman and SA Nick DeGennaro made contact with LUMPKIN and interviewed him in reference to his purchase of firearms from Dahlonega Gold & Pawn. LUMPKIN stated that he had purchased approximately 150 firearms over the past two years. Of the approximate 150 firearms he purchased, LUMPKIN said that he only had ten (10) or twelve (12) firearms remaining in his possession. LUMPKIN explained that he shoots his firearms competitively, and also compiles firearm review videos on social media sites.

8. LUMPKIN stated that he buys rifles off an internet site called Outdoor Trader (ODT) and pistols from gun stores, such as I-Pawn, Mikes, Cash America, and Dahlonega Gold and Pawn. LUMPKIN stated that he shot his firearms and then sold them. LUMPKIN

stated that he used to sell his firearms on ODT, but for the past three months he sold them all to the same five (5) people. LUMPKIN could only recall the names "RICH" and "TWIN" as the individuals who purchased firearms from him.

9. LUMPKIN claimed that he sold "RICH" broken firearms and had "RICH's" phone number stored in his phone. LUMPKIN provided the agents with "RICH's" phone number. LUMPKIN explained that "TWIN" is his cousin (not a blood relative) and that "TWIN" introduced him to "RICH."

10. SA Dorman asked LUMPKIN about his firearm purchases on June 21st and June 24th. SA Dorman showed LUMPKIN a copy of the ATF Form 4473 (Firearms Transaction Record) from June 21, 2019. LUMPKIN acknowledged that he purchased multiple firearms and verified that it was his signature on the form. LUMPKIN stated that after he purchased the firearms, he shot them and subsequently sold them to "RICH."

11. LUMPKIN stated that he has met "RICH" in person on multiple occasions. LUMPKIN described 'RICH" as being a well-dressed, short, "lanky" older black male with a Haitian accent and gray in his beard. LUMPKIN stated that he believed "RICH" lives in Georgia and drove a newer model white Ford F250 pickup truck.

12. SA Dorman asked LUMPKIN why he went to Dahlonega Gold & Pawn on Friday, June 28, 2019. LUMPKIN stated that he needed to return to the FFL to complete a form from the June 21, 2019 purchase. LUMPKIN believed a staff member misplaced a form he completed for the June 21, 2019 sale of firearms and was returning at their request.

13. SA Dorman asked LUMPKIN why he went to Dahlonega Gold & Pawn on Saturday, June 29, 2019. LUMPKIN stated that he was going to buy firearms which he knew would be transferred to "RICH." LUMPKIN stated that employees told him that he

could not purchase any more firearms.

14. SA Dorman asked LUMPKIN if he told "RICH" or "TWIN" that he was advised by staff at Dahlonega Gold & Pawn that he was not allowed to purchase anymore firearms from them. LUMPKIN stated that he did tell "RICH," "TWIN," and his sister that he couldn't buy any more firearms.

15. SA Dorman asked LUMPKIN if he recalled purchasing approximately 30 firearms from Dahlonega Gold & Pawn in May of 2019. LUMPKIN stated that he did and that the total purchase of the firearms totaled approximately $7,000.00 dollars. LUMPKIN stated that all of the firearms except one were purchased by "RICH." LUMPKIN said that the multiple firearms purchase occurred over a period of approximately five days and that he made multiple in person sales to "RICH." LUMPKIN said that "RICH" paid him for the firearms using cash and had also provided him money using PAYPAL.

16. According to ATF databases, LUMPKIN is not licensed as a firearms dealer.

17. SA Dorman provided "RICH's" phone number to an ATF Intelligence Research Specialist (IRS) who located a person associated with that number named Richard PHILIPPE (DOB: 09/05/1979). SA Dorman received a color digital photograph of PHILIPPE. SA Dorman showed the photograph which contained no identifying information to LUMPKIN. LUMPKIN reviewed the photograph and stated that he recognized the depicted individual to be the person he knew as "RICH." "RICH" was identified as Richard PHILIPPE.

18. According to a review of PHILIPPE's driver's license, which is active and not expired, he is a resident of Massachusetts with an address of 3 Eden Terrace, Attleboro, Massachusetts. A review of his criminal history shows arrests in Massachusetts and

Rhode Island.

19. SA Dorman asked LUMPKIN if he thought PHILIPPE would meet him to purchase more firearms. LUMPKIN stated that PHILIPPE would meet him if he told him he had more firearms to sell. SA Dorman asked LUMPKIN if he would place a consensually monitored telephone call to PHILIPPE and offer PHILIPPE additional firearms. LUMPKIN agreed. LUMPKIN acknowledged that all of the firearms that LUMPKIN had purchased in the past four months were subsequently sold to PHILIPPE. LUMPKIN estimated that he sold PHILLIPE approximately 50 firearms and received approximately $11,000.00 dollars in compensation from PHILIPPE.

20. A review of ATF records revealed that LUMPKIN purchased approximately 97 firearms from Dahlonega Gold and Pawn in the last four months, since March of 2019.

21. SA Dorman asked LUMPKIN if he thought PHILIPPE would consider it strange for LUMPKIN to tell him he now had firearms to sell after being told he couldn't purchase anymore firearms the previous Friday. LUMPKIN stated that he did not because PHILIPPE called him the previous night (June 30, 2019) and requested that LUMPKIN acquire more firearms for PHILIPPE to purchase. SA Dorman asked LUMPKIN again if he would be willing to make a recorded phone call to PHILIPPE, and LUMPKIN said that he would.

22. LUMPKIN called PHILIPPE at 774-203-6780 and explained to him that he was in possession of Glock firearms. PHILIPPE asked LUMPKIN if he was allowed to buy firearms again, and LUMPKIN said yes. PHILIPPE told LUMPKIN that he would pick up the firearms on Wednesday, July 3, 2019. PHILIPPE and LUMPKIN agreed to meet in Atlanta, Georgia. PHILLIPPE said that he was "coming down."

23. On July 2, 2019, LUMPKIN told SA Dorman that he sold firearms to PHILIPPE on or about June 22, 2019 at a location near Yahoola Creek, Dahlonega, Georgia, in the Northern District of Georgia. Based on the timing, agents believe that these firearms would include the Taurus and Glock pistols purchased by LUMPKIN and recovered in Massachusetts on June 28, 2019, as mentioned in paragraph 1.

24. ATF agents in Boston interviewed a person of interest, who stated that he previously purchased firearms on five different occasions from PHILIPPE at a warehouse in Massachusetts that PHILIPPE utilized to sell firearms. The person of interest stated that PHILIPPE obtained the firearms to sell from Georgia.

25. Based on ATF databases, PHILIPPE does not have a license to deal in firearms.

26. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 922(a)(5) [transfer of firearms to out of state resident] and 924(n) [travel between states with intent to unlawfully deal in firearms] have occurred.

## CONCLUSION

Based on the facts above, there is probable cause to believe that PHILIPPE has violated Title 18, United States Code, Sections 922(a)(5) [transfer of firearms to out of state resident] and 924(n) [travel between states with intent to unlawfully deal in firearms].